UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                   :
ENTERTAINMENT BY J&J, INC.,                   :

                                    Plaintiff,                    :

                                                            :         02 Civ. 1119 (CSH) (MHD)
   -against-                            :

                                                            :         MEMORANDUM OPINION
LAS HERMANAS RESTAURANT, INC.,        :         AND ORDER
d/b/a LAS HERMANAS RESTAURANT,        :
and d/b/a  LOS JINETES BAR & GRILL,      :
INC., d/b/a LAS HERMANAS  RESTAURANT, :
and LOS JINETES BAR & GRILL, and        :
GRISELDA REYES, individually, and d/b/a   :
LAS HERMANAS RESTAURANT, and d/b/a  :
LOS JINETES BAR AND GRILL,                :

                                   Defendants.          :

------------------------------------------------------------------------x

HAIGHT, Senior District Judge:

       In June of 2005, defendants Las Hermanas Restaurant, Inc. and Griselda Reyes moved to vacate a default judgment entered against them on the ground that defective service of process precluded this Court from having *in personam* jurisdiction over them.[1]  Following a hearing on June 9, 2005, I issued an opinion and order in which I determined that a traverse hearing was necessary to assess the sufficiency of process. *See Entm't by J&J, Inc. v. Las Hermanas Rest., Inc.*, 2005 U.S. Dist. LEXIS 11813 (S.D.N.Y. June 15, 2005).  I referred the case for that purpose to Magistrate Judge Dolinger.  On November 21, 2005, Judge Dolinger conducted an evidentiary hearing.  On May 10, 2006, he issued a Report and Recommendation ("R&R") concluding that service of process had been proper and that defendants' motion should be denied.  Thereupon defendants entered Objections and, later, Supplemental Objections to the

---

[1] Defendant Los Jinetes Bar and Grill was not a party to this motion.

R&R, to which plaintiff responded.  Prior to deciding whether to adopt Judge Dolinger's R&R, I issued an order granting defendants the opportunity to demonstrate whether, apart from their jurisdictional argument, they can provide any reason pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure justifying relief from the operation of the judgment entered against them.  Defendants submitted papers on this question, and plaintiff responded.

I now consider Judge Dolinger's R&R, together with both parties' arguments as to whether I should adopt it, as well as the subsequent submissions concerning Rule 60(b)(6).

### Judge Dolinger's R&R

Having reviewed the record, this Court agrees with Judge Dolinger's findings and with his recommendation.  Under Rule 72(b), Fed. R. Civ. P., my review of those portions of Judge Dolinger's R&R to which objection has been made is de novo.  Defendants' objections to his R&R pertain in large part to the sufficiency of service of process on defendant Reyes pursuant to N.Y. C.P.L.R. § 308(2).[2]  Defendants' supplemental memorandum consists of quoted testimony from the traverse hearing and conclusory statements that the alleged insufficiency of service is "further confirmed" by this testimony.  *See* Def.'s Supplemental Written Objections to the May 10, 2006 R&R of U.S. Magistrate Judge Michael H. Dolinger ("Def.'s Supp. Objections") at 3, 8.  From what defendants do offer by way of argumentation, I discern the following objections:

---

[2]In their initial written Objections, defendants also advanced some manner of objection to the R&R as it pertained to service of process on the corporate defendant Las Hermanas Restaurant, Inc.  *See* Def.'s Written Objections to the May 10, 2006 R&R of U.S. Magistrate Judge Michael H. Dolinger, at 5 ("That Magistrate Haight's [sic] report and recommendations are further in error, as to the service on Mr. Vidal, as to the service upon the corporation.  Specifically, as it was undisputed that the [sic] Mr. Vidal, who may have received the pleadings, this was only sufficient to sustain the service of process and does not foreclose the vacating of a default judgment and the filing of an answer by the Defendants. . . .").  To the extent that those unintelligible fragments do state an objection to service of process on Las Hermanas Restaurant, I reject it and agree with Judge Dolinger's finding that plaintiff properly served the corporate defendant through the office of the Secretary of State and that defendants' denial that they received notice through this process is not credible.  *See* R&R at 12-17.  Defendants' other arguments in their initial Objections are equally without merit.

(1) service was defective because the process server, Francisco Villa, "never asked" the recipient of process whether she was Defendant Reyes's sister, whether she was accepting the papers, or whether she would deliver them to defendant Reyes; (2) service was defective because the mailing of the documents to Defendant Reyes was "contrived," as Villa did not prepare the mailings or check them himself before mailing them, and that, additionally, Villa's testimony about the mailing was inadmissible hearsay; and (3) Villa's credibility is undermined both by inconsistencies between his affidavit of service and his testimony at the hearing and by his "misleading" answers to questions concerning the whereabouts of his logbook. Def's. Supp. Objections at 8-9.

None of defendants' objections has merit. New York law permits service of process by what is known as the "leave and mail" method, whereby service is made by delivery to a person of suitable age and discretion at the defendant's actual place of business, dwelling place, or usual place of abode, coupled with mailing process to the defendant at either his or her last known residence or actual place of business. C.P.L.R. § 308(2). This is the method plaintiff sought to use in this case, where Villa handed the summons and complaint to a person who identified herself as Anna Reyes inside Las Hermanas Restaurant, which is defendant Griselda Reyes's actual place of business. Defendants protest that Villa did not ask the recipient of the papers about her relationship to defendant Reyes or "if these papers were being accepted and if the documents would be delivered to the Defendant." Def.'s Supp. Objections at 8. However, the law does not require a process server to make these specific inquiries. It merely requires that the person to whom delivery is made be of sufficient maturity, understanding, and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant.

*New York v. Chemical Bank*, 470 N.Y.S.2d 280, 285 (N.Y. Sup. 1983).[3]  *See Pub. Admin. v. Markowitz*, 557 N.Y.S.2d 348, 348 (App. Div. 1st Dep't 1990) (C.P.L.R. § 308(2) only requires that process be served upon a person of suitable age and discretion at the actual place of business, "regardless of whether or not that person is an employee or is otherwise officially authorized to accept service on behalf of the defendant"); *Oxhandler v. Sekhar*, 451 N.Y.S.2d 100 (App. Div. 1st Dep't 1982) (service properly effected where credible evidence exists that process server left summons and complaint with woman in nurse's uniform whom he took to be a receptionist at defendant doctor's office, even though hospital nurses did not regularly work in those doctors' offices and process papers were later found on floor of reception area).  Here Villa testified that he handed the documents to a woman who identified herself as Anna Reyes and whom he had reason to believe knew defendant Reyes, as she answered in the negative when asked whether "Griselda would be around."  Tr. of Hr'g before Judge Michael H. Dolinger, Nov. 21, 2005 ("Hr'g Tr."), at 19.  The existence of an Anna Reyes, an adult sister of Griselda Reyes whose physical description roughly matches the description in Villa's affidavit, corroborates this testimony.  Because Villa avers that he handed her the summons and complaint and asked her to give them to Griselda, this Court agrees with Judge Dolinger that the steps taken by Villa to leave the papers with Anna Reyes comport with the requirements of § 308(2).

As to defendants' second objection, § 308(2) requires only that process be sent by first class mail in an envelope bearing the legend "personal and confidential" and not indicating on the outside that the communication is from an attorney or concerns an action against the person served.  C.P.L.R. §308(2).  Nowhere does the rule require the process server to personally stuff

---

[3] The meaning of "delivery" in § 308(2) is tender of the papers, just as it is in § 308(1).  Vincent Alexander, Practice Commentary on C.P.L.R. § 308, citing *Bossuk v. Steinberg*, 447 N.E.2d 56 (N.Y. 1983).

or address the envelope of process mailed in conformity with "leave and mail" service. Villa testified that he checked the contents of the envelope and oversaw its stuffing and addressing by others and then himself delivered it to the post office. Hr'g Tr. at 21. His testimony, which concerns firsthand knowledge, is not hearsay and is therefore admissible evidence in support of his assertion that he completed this portion of "leave and mail" service.

As to defendants' third objection, which concerns Villa's credibility, this Court agrees with the plaintiff that alleged inconsistencies in his testimony result from defendants' efforts to confuse him during his testimony and to twist the meaning of his words. Defendants first claim that Villa made misleading statements concerning the whereabouts of his logbooks, because he stated he had "lost" them when in fact they had been sold due to non-payment of storage fees in the storage facility where he had deposited them. Def.'s Supp. Objections at 8 ("[T]here is a big difference between losing property placed into storage versus having it sold for non-payment of storage fees."). Villa, however, was not inconsistent on this score. He testified that when he returned from Pennsylvania and sought to retrieve his belongings from storage, he was informed by his son that "everything was lost." Hr'g Tr. at 10. He never implied that he had personally mislaid the logbooks, employing the word "lost" in the sense used to indicate that possession has been lost, regardless of fault – as in "we lost everything in the storm." As Villa himself clarified when challenged by defendants' counsel at the hearing, "Sir, what I mean by being lost, lost to me, my stuff is lost. I don't care about my son's stuff. I cared about mine. That's the loss to me." Hr'g Tr. at 10. Villa's credibility is hardly undermined by his use of the word "loss" in this sense.

Defendants next point to an asserted inconsistency between Villa's reference to Los Jinetes Bar and Grill in his affadavit of service and his statement during the hearing that he never

served that restaurant with process. Def.'s Supp. Objections at 8-9. As plaintiff point outs, though, Villa only referred to the restaurant in his affadavit of service because he was quoting the case caption, where Defendant Reyes is referred to as "Griselda Reyes, individually and d/b/a Las Hermanas Restaurant and d/b/a Los Jinetes Bar and Grill." It has never been disputed that Villa had no role in the service of process upon Los Jinetes, a corporate defendant in the case. His reference to the restaurant in the affidavit of service is immaterial to the sufficiency of service of process on defendant Reyes and does not undermine his credibility.

In his report Judge Dolinger provided this Court with an analysis of the testimony, including his assessment that Villa was credible and his assessment that the steps taken by him to serve process on defendant Reyes were legally sufficient. Defendants' Objections, which largely recapitulate highly selective and isolated sections of the transcript reflecting portions of the hearing where they attempted to ensnare the process server in verbal traps, are unpersuasive.

### Setting Aside the Judgment Under Rule 60(b)

Rule 55(c) provides that an entry of default may be set aside "for good cause shown" and that a default judgment may be set aside in accordance with Rule 60(b). Among the other grounds, such as "mistake, inadvertence, surprise, or excusable neglect," *see* Fed. R. Civ. P. 60(b)(1), Rule 60(b) permits relief from judgment for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). In practice, courts apply the same set of factors in considering motions to set aside an entry of default and motions to set aside a default judgment, but the factors are applied more rigorously in the case of a default judgment, which is a final, appealable action by the district court. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). Those factors are "(1) whether the default was willful; (2) whether setting aside

the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* at 96.  In order to show that it has a meritorious defense, a defendant must present evidence of facts that would constitute a complete defense, although the defendant need not establish its defense conclusively.  *Sec. & Exch. Comm'n v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998).

   Beginning with the third of these factors, I find that defendants have presented no meritorious defense.  Reyes's repeated assertions that she was never served with process are belied by her continuous receipt of mail at the address to which the process was mailed — and, of course, by Judge Dolinger's evidentiary finding, which I adopt, that service had been properly effected.  Rather than offering an explanation for their failure to respond, defendants merely contend that it would be illogical for them to have ignored the summons.  *See* Def.'s Mem. in Response to this Court's Oct. 23, 2006 Mem. Op. & Order, Nov. 21, 2006, at 3 ("Furthermore, it would not make sense for the Defendants to continuously ignore one set of legal papers after the next knowing full well what is actually involved in vacating a default judgment . . . as opposed to simply interposing an answer on time.").

   The plaintiff, however, offers an explanation of its own for defendants' conduct.  Plaintiff points out that an entire year passed after the entry of judgment before defendants undertook to contest it and that the late decision to contest in May of 2005 coincided with the appearance of funds in a bank account in defendant Reyes's name.  Pl.'s Mem. in Opp'n to Setting Aside Def.-Movant's Default Pursuant to Fed. R. Civ. P. 60(b), Dec. 7, 2006 ("Pl's Dec. 7, 2006 Mem."), at 6.  Prior to this time, the default judgment had been unenforceable due to plaintiff's inability to locate a bank account with sufficient funds to pay the amount due.  *See id.*  Plaintiff implies that if it were not for this deposit in that account (which plaintiff gathers to have been accidental), defendants would never have contested the default judgment because they

knew the plaintiff could not recover from them.  This span of time between the default judgment and defendants' objection to it supports Judge Dolinger's conclusion that defendants have acted in bad faith throughout.  *See* R&R at 9-12.  Such bad faith suggests that defendants' default was "willful."  *See Argent v. Office of Personnel Mgm't*, 1997 WL 278115 (S.D.N.Y. May 22, 1997),

at *3 ("Willfulness may be found when, for example, a defaulting party has acted in bad faith or has made a strategic decision to default.") (quotations and citation omitted).

Finally, plaintiff urges that a reopening of the default judgment would prejudice it because it is no longer able to locate the investigator who, back in 1999, affirmed to the Court had he had witnessed the illegally intercepted telecast that was the basis for this action. *See* Pl.'s Dec. 7, 2006 Mem., at 5. He would be a key witness if the underlying case were to be tried. These circumstances indicate that the plaintiff would be hard pressed at this late date to put on its case, a factor which further weighs against defendants' request that the default judgment be vacated.

As all three factors clearly weigh against defendants, I conclude that they have not shown any reason justifying relief from the operation of the judgment against them.

### Conclusion

Accordingly, I accept Judge Dolinger's R&R in its entirety, deny defendants' motion to vacate the judgment, and vacate the stay of enforcement of the default judgement.

It is SO ORDERED.

Dated: New York, New York
       December 12, 2006

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE